ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
VILMA PALMA-SOLANA (SBN 267992)
VIRGINIA CORRIGAN (SBN 292035)
Supervising Deputy Attorneys General
ALYSSA ZHANG (SBN 360105)
KENNETH SUGARMAN (SBN 195059)
EMILIA P. E. MORRIS (SBN 253681)
Deputy Attorneys General
2550 Mariposa Mall, Room 5090
Fresno, CA 93721
Telephone: (559) 492-4559
Fax: (916) 732-7920
E-mail: Emilia.Morris@doj.ca.gov

*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE GEO GROUP, INC.**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ROB BONTA, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF CALIFORNIA**<br><br>**Defendant.** | Case No. 1:26-CV-08059-KES-HBK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: January 19, 2027<br>Time: 1:30 p.m.<br>Dept: 6<br>Judge: The Hon. Kirk E. Sherriff |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 19, 2027, at 1:30 p.m., or as soon thereafter as counsel may be heard by the Honorable Kirk E. Sherriff in Courtroom 6 of the United States District Court for the Eastern District of California, located at 2500 Tulare Street, Fresno, California 93721, Defendant Rob Bonta, in his official capacity as Attorney General of the State of California (Defendant), will and hereby does move to dismiss Plaintiff The GEO Group, Inc.'s (GEO's) Complaint. Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that GEO has failed to state a plausible claim for relief. This Motion is based on this filing, the accompanying Memorandum of Points and Authorities, the papers and pleadings on file in this action, and such matters as may be presented to the Court at the time of the hearing.

Pursuant to Section I.C. of the Court's Standing Order in Civil Cases, Counsel for Defendant hereby certifies that meet and confer efforts have been exhausted. Counsel for the parties engaged in meet and confer efforts in an attempt to resolve this Motion on November 17, 2026. Despite these efforts, the parties were unable to resolve this Motion.

Dated: November 18, 2026

Respectfully submitted,

**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
VILMA PALMA-SOLANA
VIRGINIA CORRIGAN
Supervising Deputy Attorneys General
ALYSSA ZHANG
KENNETH SUGARMAN
Deputy Attorneys General

/s/ EMILIA P. E. MORRIS
Emilia P. E. Morris
Deputy Attorney General

*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*

# TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

LEGAL AND FACTUAL BACKGROUND ..... 2

ARGUMENT ..... 4

I. Legal Standard ..... 4

II. Count I Fails to State a Viable Intergovernmental Immunity Direct Regulation Claim. ..... 5

A. GEO Has Not Pled and Cannot Plead a Cognizable Claim for Direct Regulation Intergovernmental Immunity Because SB 942 Does Not Regulate the Federal Government. ..... 5

B. SB 942 Is Not an Impermissible Licensing Regime. ..... 7

III. SB 942 Is Not Preempted by Federal Law. ..... 9

A. Count II Fails to State a Viable Field Preemption Claim. ..... 9

B. Count III Fails to State a Viable Obstacle/Conflict Preemption Claim. ..... 14

IV. Count IV Fails to State a Viable Contract Clause Claim. ..... 17

A. SB 942 Does Not Substantially Impair GEO's Contracts with ICE. ..... 18

B. SB 942 is Reasonably and Appropriately Tailored to Advance a Significant and Legitimate Public Purpose. ..... 20

V. GEO Fails to Plead Key Facts Regarding the Operative Contracts and Applicable Federal Detention Standards for Its California Facilities, Rendering Its Complaint Facially Defective. ..... 21

CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Allied Structural Steel Co. v. Spannaus*
438 U.S. 234 (1978) ........ 17, 19, 20

*Am. Ins. Ass'n v. Garamendi*
539 U.S. 396 (2003) ........ 15

*Arizona Dream Act Coalition v. Brewer*
855 F.3d 957 (9th Cir. 2017) ........ 12

*Arizona v. United States*
567 U.S. 387 (2012) ........ *passim*

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 4, 23

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1988) ........ 4

*Bell Atl. Corp. v. Twombly*
550 U.S. 554 (2007) ........ 4

*Cal. Grocers Ass'n v. City of Long Beach*
553 F. Supp. 3d 784 (C.D. Cal. 2012) ........ 20

*Campanelli v. Allstate Life Ins. Co.*
322 F.3d 1086 (9th Cir. 2003) ........ 20

*Chamber of Commerce of U.S. v. Whiting*
563 U.S. 582 (2011) ........ 14

*Chao Chen v. GEO Grp., Inc.*
287 F. Supp. 3d 1158 (W.D. Wash. 2017) ........ 12

*City & Cnty. of San Francisco v. Trump*
816 F. Supp. 3d 1017 (N.D. Cal. 2026) ........ 1

*Cohen v. Apple Inc.*
46 F.4th 1012 (9th Cir. 2022) ........ 11

*Crosby v. National Foreign Trade Council*
530 U.S. 363 (2000) ........ 15

*De Canas v. Bica*
424 U.S. 351 (1976) ........ 12

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Doe v. Trump*
284 F. Supp. 3d 1182 (W.D. Wash. 2018) ... 1

*Energy Reserves Group, Inc. v. Kan. Power & Light Co.*
459 U.S. 400 (1983) ... 18, 19, 20, 21

*Foti v. City of Menlo Park*
146 F.3d 629 (9th Cir. 1998) ... 4, 5, 21

*Friedman v. AARP, Inc.*
855 F.3d 1047 (9th Cir. 2017) ... 4

*GEO Grp., Inc. v. Ferguson*
No. C23-5626, 2026 WL 1983207 (W.D. Wash. July 9, 2026) ... 9, 12

*GEO Grp., Inc. v. Inslee*
151 F.4th 1107 (9th Cir. 2025) ... *passim*

*GEO Grp., Inc. v. Inslee*
720 F. Supp. 3d 1029 (W.D. Wash. 2024) ... 12, 16

*GEO Grp., Inc. v. Newsom*
50 F.4th 745 (9th Cir. 2022) ... 5, 7, 10

*Georgia Latino All. for Hum. Rts. v. Gov. of Georgia*
691 F.3d 1250 (11th Cir. 2012) ... 13

*Gill v. U.S. Dep't of Just.*
913 F.3d 1179 (9th Cir. 2019) ... 8, 12

*Hancock v. Train*
426 U.S. 167 (1976) ... 8

*Hencely v. Fluor Corp.*
146 S. Ct. 1086 (2026) ... 16, 17

*Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*
471 U.S. 707 (1985) ... 11

*Hines v. Davidowitz*
312 U.S. 52 (1941) ... 13, 15, 16

*Hotop v. City of San Jose*
982 F.3d 710 (9th Cir. 2020) ... 18

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Johnson v. Lewis*
217 F.3d 726 (9th Cir. 2000)........................................................................................ 6, 8

*Johnson v. Maryland*
254 U.S. 51 (1920)............................................................................................................ 8

*Kaiser Dev. Co. v. City & Cnty. of Honolulu*
649 F. Supp. 926 (D. Haw. 1986)................................................................................... 18

*Karboau v. Clark*
577 Fed. Appx. 678 (9th Cir. 2014)................................................................................ 13

*L.T. v. U.S. Immigr. & Customs Enf't*
No. 5:26-cv-00322, 2026 WL 2678270 (C.D. Cal. Sept. 11, 2026)................................... 3

*Leslie Miller v. Arkansas*
352 U.S. 187 (1956).......................................................................................................... 8

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
416 F.3d 940 (9th Cir. 2005)............................................................................................ 4

*Mathews v. Diaz*
426 U.S. 67 (1976).......................................................................................................... 13

*Minneci v. Pollard*
565 U.S. 118 (2012)........................................................................................................ 13

*N. Star Int'l v. Ariz. Corp. Comm'n*
720 F.2d 578 (9th Cir. 1983)............................................................................................ 4

*Nat'l Fed'n of the Blind v. United Airlines Inc.*
813 F.3d 718 (9th Cir. 2016)........................................................................................... 14

*Newbrough v. Piedmont Reg'l Jail Auth.*
No. 3:10CV867–HEH, 2012 WL 169988 (E.D. Va. Jan. 19, 2012).................................. 11

*Nw. Grocery Ass'n v. City of Seattle*
526 F.Supp.3d 884 (W.D. Wash. 2021).......................................................................... 20

*Nwauzor v. GEO Grp., Inc.*
127 F.4th 750 (9th Cir. 2025)................................................................................. 1, 7, 13

*Pub. Utils. Comm'n v. United States*
355 U.S. 534 (1958).......................................................................................................... 8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Reid v. Johnson & Johnson*
780 F.3d 952 (9th Cir. 2015) .......... 12

*Rice v. Santa Fe Elevator Corp.*
331 U.S. 218 (1947) .......... 9, 12

*Roe v. CoreCivic, Inc.*
823 F.Supp.3d 1137 (S.D. Cal. 2026) .......... 13

*S. Cal. Gas Co. v. City of Santa Ana*
336 F.3d 885 (9th Cir. 2003) .......... 17, 20

*S. Cal. Rental Housing Ass'n v. Cnty. of San Diego*
550 F.Supp.3d 853 (S.D. Cal. 2021) .......... 20

*Sanchez v. Navy Fed. Credit Union*
No. EDCV 23-285, 2023 WL 6370235 (Aug. 14, 2023 C.D. Cal.) .......... 22

*Seltzer v. Cochrane*
104 F.3d 234 (9th Cir. 1996) .......... 21

*Sveen v. Melin*
584 U.S. 811 (2018) .......... *passim*

*U.S. Trust Co. of N.Y. v. New Jersey*
431 U.S. 1 (1977) .......... 19

*United States v. California*
921 F.3d 865 (9th Cir. 2019) .......... *passim*

*United States v. New York*
No. 1:26-CV-1360, 2026 WL 2225423 (N.Y.N.D. Aug. 23, 2026) .......... 20

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) .......... 4

*Valle del Sol Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013) .......... 13

*Warren v. Fox Fam. Worldwide, Inc.*
328 F.3d 1136 (9th Cir. 2003) .......... 4

*Wash. Dep't of Health v. GEO Grp., Inc.*
No. 24-5880, 2025 WL 2986482 (9th Cir. Oct. 23, 2025) .......... 22

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*Youngers v. Mgmt. & Training Corp.*
No. 20-465, 2021 WL 5994878 (D.N.M. Apr. 19, 2021) ..... 11

**STATUTES**

United States Code
Title 6, § 112(b)(2) ..... 7, 10
Title 6, § 205 ..... 10, 18
Title 8, § 1231(g)(1) ..... 10
Title 18, § 4013 ..... 10
Title 28, § 530C(a)(4) ..... 10

Armed Services Procurement Act of 1947 ..... 8

California Civil Code
§ 53.9 ..... 2
§ 53.9(b) ..... 2, 6

California Civil Detainees' Bill of Rights Act of 2026 (SB 942) ..... *passim*

California Code of Regulations
Title 9, § 883 ..... 2
Title 9, § 884 ..... 2
Title 15 ..... 19

California Government Code
§ 7321(a) ..... 19
§ 12532 ..... 3
§ 12532(c) ..... 16
§ 12532.1 ..... 2, 6

California Penal Code
§ 9506(a)(1) ..... 19

California Welfare & Institutions Code
§ 4502 ..... 2
§ 4503 ..... 2
§ 5325 ..... 2, 6
§ 5325.1 ..... 2, 6

Homeland Security Appropriations Act, 2026,
https://docs.house.gov/billsthisweek/20260119/DEF%20LHHS%20HS%20THUD%20-%20JES%20 %20Division%20C%20-%20Homeland%20-%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%20-%20Reduced%20File%20Size.pdf (last visited Nov. 16, 2026) ..... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Immigration and Nationality Act (INA) .......... 13

Lanterman Developmental Disabilities Services Act .......... 2

Lanterman-Petris-Short (LPS) Act .......... 2

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article I, § 10, cl. 1 (Contract Clause) .......... 2, 3, 17

U.S. Const. Article VI, cl. 2 (Supremacy Clause) .......... *passim*

**COURT RULES**

Rule 12(b)(6) .......... 4

**OTHER AUTHORITIES**

California Department of Justice, *Immigration Detention in California: A Review of Conditions of Confinement* (May 2026, rev. June 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf .......... 4

California Senate Bill No. 942, Assem. Floor Analysis (Aug. 21, 2026), 2025-2026 Reg. Sess. (Cal. 2026) .......... 6, 21

California Senate Bill No. 942, § 2(b), 2025-2026 Reg. Sess. (Cal. 2026) .......... 21

Code of Federal Regulations
- Title 8, § 235.3(e) .......... 10, 11, 18
- Title 48, § 1.602-1(a) .......... 10
- Title 48, § 3017.204-90 .......... 10

Immigration User Fee, Conforming Amendments, 54 Fed. Reg. 100-01 (Jan. 4, 1989) .......... 11

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Senate Bill (SB) 942 imposes basic human dignity requirements that Plaintiff The GEO Group, Inc., a federal contractor, claims it is not obligated to recognize. Indeed, SB 942 is a constitutional exercise of the state's traditional police power and is consistent with California's general authority to protect the health and welfare of inmates and detainees within California's borders. *See United States v. California*, 921 F.3d 865, 886 (9th Cir. 2019). The Ninth Circuit already has considered and rejected Supremacy Clause arguments like those raised by GEO in this action. *See GEO Grp., Inc. v. Inslee*, 151 F.4th 1107, 1118, 1123-24 (9th Cir. 2025), *reh'g en banc denied*, 166 F.4th 1188 (9th Cir. 2026) (mem.), *petition for cert. filed sub nom.*, *GEO Grp., Inc. v. Ferguson*, No. 26-71 (U.S. July 10, 2026).[1] This Court should do so as well.

GEO's Complaint conveniently ignores *Inslee* and mischaracterizes the current state of intergovernmental immunity and preemption law that applies to it as a private company that provides a service to the federal government as a contractor. Although GEO has sought certiorari at the U.S. Supreme Court*, Inslee* remains the law of this circuit and must be followed unless intervening Supreme Court authority is clearly irreconcilable. *See City & Cnty. of San Francisco v. Trump*, 816 F. Supp. 3d 1017, 1035 (N.D. Cal. 2026); *Doe v. Trump*, 284 F. Supp. 3d 1182, 1185 (W.D. Wash. 2018). The failure to plead the correct legal standard for Counts I, II, and III alone is sufficient for this Court to find that GEO fails to state a cognizable claim that SB 942 is unconstitutional under U.S. Const. art. VI, cl. 2 (Supremacy Clause).

GEO cannot and does not plead facts to show that it can meet the correct standard for its direct regulation intergovernmental immunity and preemption claims. Under binding authority in this circuit, SB 942 does not violate the Supremacy Clause. Like the Washington law at issue in *Inslee*, SB 942 does not give the State of California (or Defendant) power over ICE's decisions regarding whom to detain or whom to hire to run its detention facilities. SB 942 seeks only to regulate how GEO treats the detainees in its care by ensuring basic health-and-safety rights

---

[1] *See also Nwauzor v. GEO Grp., Inc.*, 127 F.4th 750, 763, 770 (9th Cir. 2025), *reh'g en banc denied*, 146 F.4th 1280 (9th Cir. 2025) (mem.), *petition for cert. filed*, No. 25-828 (U.S. Jan. 9, 2026).

relating to the conditions of confinement—rights that are mirrored in federal standards that already apply to GEO.

GEO's preemption claims (Counts II and III) fail for similar reasons. As the Ninth Circuit has repeatedly held, Congress has never expressed an intent to "supersede" states' longstanding "authority to ensure the health and welfare of inmates and detainees in facilities within [their] borders." *California*, 921 F.3d at 886; *see also Inslee*, 151 F.4th at 1123. And because the standards set by SB 942 are complementary to existing federal standards, GEO cannot plausibly plead conflict or obstacle preemption.

GEO also has failed to state a claim under U.S. Const. art. I, § 10, cl. 1 (Contract Clause) in Count IV, because the Complaint fails to plead the well-established elements for constitutional invalidation of a state law that impairs the "Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1; *Sveen v. Melin*, 584 U.S. 811, 818-19 (2018).

The Complaint should therefore be dismissed with prejudice because there are no facts GEO can plead to cure the Complaint's defects.

## LEGAL AND FACTUAL BACKGROUND

GEO challenges the recently enacted SB 942, the Civil Detainees' Bill of Rights Act of 2026, codified at Cal. Civ. Code § 53.9 and Cal. Gov't Code § 12532.1. Compl. ¶¶ 1, 22. SB 942 extends to all individuals housed or detained in any state, county, local or private locked detention facility, including an immigration detention facility, rights already existing for other civil detainees in the state, such as those found in the Lanterman-Petris-Short (LPS) Act, Cal. Welf. & Inst. Code §§ 5325–5325.1; the Lanterman Developmental Disabilities Services Act, Cal. Welf. & Inst. Code §§ 4502–4503; and Cal. Code Regs. tit. 9, §§ 883–884 (2026). Cal. Civ. Code § 53.9. SB 942 recognizes nine rights for civil detainees, including rights relating to the provision of medical care, clean drinking water, and food that is adequate to maintain health. *Id.* § 53.9(b). SB 942 also provides for civil penalties for violations of these rights and gives enforcement authority to the Attorney General. Cal. Gov't Code § 12532.1.

GEO alleges that SB 942 1) violates the Supremacy Clause as an unconstitutional direct regulation under the intergovernmental immunity doctrine; 2) is field preempted; 3) is

conflict/obstacle preempted; and 4) violates the Contract Clause. Compl. ¶¶ 73-105.[2] GEO seeks a declaration that SB 942 "violates the Supremacy Clause and the Contract[] Clause of the United States Constitution, is preempted by federal law, and is unconstitutional as applied to GEO in its operation of detention facilities for ICE." *Id.* at 26 (Prayer for Relief). GEO alleges that SB 942 is unconstitutional and invalid "as applied to GEO's operation of federal immigration detention facilities in California on behalf of ICE." *Id.* ¶ 80; *see also id.* ¶¶ 89, 99. GEO also seeks preliminary and permanent injunctive relief preventing the enforcement of SB 942 against it in its operation of ICE detention facilities. *Id.* at 26 (Prayer for Relief).

As discussed in Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction (Opposition), SB 942 was passed by California's legislature to respond to increasingly dangerous conditions in immigration detention facilities, including but not limited to the Adelanto ICE Processing Center (Adelanto), which is operated by GEO and at which four deaths occurred between September 2025 and March 2026. *See* Opposition at 3-4, 21, Dkt. No. 12. Conditions at GEO's Adelanto facility have been so problematic that a district court has entered a preliminary injunction regarding, *inter alia*, the provision of health care, nutritious meals and potable water, and has appointed external monitors. *L.T. v. U.S. Immigr. & Customs Enf't*, No. 5:26-cv-00322, 2026 WL 2678270 (C.D. Cal. Sept. 11, 2026).

More broadly, since 2017, the Attorney General has been mandated to inspect and report on the conditions at immigration detention facilities. Cal. Gov't Code § 12532.[3] Through these inspections, the Attorney General has made findings of and received reports of inadequate medical care, delays in medical treatment, overcrowding, inadequate food, excessive use of force by detention facility guards, and inadequate clothing, violating standards such as those guaranteeing nutritious meals, a hygienic living environment, reasonable use of force, and adequate medical care at GEO's facilities.[4] Against this background of deteriorating and

---

[2] The first three claims are brought under doctrines stemming from the Supremacy Clause, U.S. Const. art. VI, cl. 2, while the fourth claim is brought under the Contract Clause, U.S. Const. art. I, § 10, cl. 1.

[3] California's law instituting this mandate was challenged by the federal government on intergovernmental immunity and preemption grounds; the Ninth Circuit largely upheld the law. *See California*, 921 F.3d at 884, 886.

[4] *See* Opposition at 3, Dkt. No. 12; Request for Judicial Notice in support of Defendant's Opposition to

(continued…)

dangerous conditions, SB 942 was enacted to provide a critical and constitutional accountability tool for companies like GEO who are responsible for the health and safety of their charges, who in turn are unable to provide basic human necessities for themselves due to their detained status.

## ARGUMENT

### I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The court may dismiss a complaint under Rule 12(b)(6) without leave to amend if "it is clear that the complaint could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

While the court must accept all factual allegations as true, it need not assume the truth of legal conclusions cast in the form of factual allegations. *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citation omitted). While the court generally cannot consider materials outside the complaint, a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

GEO's claims are as-applied constitutional challenges to SB 942. An as-applied constitutional challenge contends that a law is unconstitutional as to a particular application of the law, such as to a particular person or activity or in a particular manner. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of reh'g* (July 29, 1998). "A

---

Plaintiff's Motion for Preliminary Injunction (RJN), Ex. A (Cal. Dep't of Just., *Immigration Detention in California: A Review of Conditions of Confinement* (May 2026, rev. June 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf) at 4-10, Dkt. No. 13.

successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Id.*

## II. Count I Fails to State a Viable Intergovernmental Immunity Direct Regulation Claim.

GEO's claim under the direct regulation intergovernmental immunity doctrine, Compl. ¶¶ 73-80,[5] fails for two reasons. First, the state can regulate government contractors like GEO without violating the direct regulation prong of the intergovernmental immunity doctrine. Second, SB 942 is not a licensing regime.

### A. GEO Has Not Pled and Cannot Plead a Cognizable Claim for Direct Regulation Intergovernmental Immunity Because SB 942 Does Not Regulate the Federal Government.

The Ninth Circuit has recognized that "[p]rivate contractors do not stand on the same footing as the federal government, so states can impose many laws on federal contractors that they could not apply to the federal government itself." *GEO Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022)[6]; *see also id*. at 757 (A "state has greater power to apply neutral regulations to a federal contractor than a federal employee"). GEO's Complaint ignores this principle and the holding of *Inslee*, 151 F.4th at 1117, 1124, in which the Ninth Circuit determined that a state law like SB 942 was an appropriate exercise of a state's power to regulate private government contractors like GEO.

In *Inslee*, 151 F.4th at 1116-18, the Ninth Circuit held that a Washington law substantially similar to SB 942 did not constitute an unconstitutional direct regulation of the federal government. The challenged law, House Bill (HB) 1470 as amended, requires the Washington Department of Health (DOH) to adopt rules necessary to ensure private detention facilities comply with standards providing detained persons with sanitary, hygienic, and safe conditions;

---

[5] The Complaint includes allegations regarding the purported targeting by California of federal immigration enforcement through past legislation. Compl. ¶¶ 2-3. It also includes allegations regarding references to immigration detention facilities in the legislative history of SB 942. *Id.* ¶¶ 22–27. California's intent in enacting SB 942 is not relevant to a direct regulation intergovernmental immunity claim.

[6] The *Newsom* court's ultimate determination that the statute at issue in that case (Assembly Bill (AB) 32) was unconstitutional under intergovernmental immunity and preemption theories is distinguishable because AB 32 completely prohibited private detention facilities within California. *Newsom*, 50 F.4th at 750-51. SB 942 does not.

provides for the DOH to conduct inspections for food services and food handling, sanitation and hygiene, and nutrition and investigations of complaints; requires the state labor agency to conduct workplace condition inspections, including for work by detained persons; grants the Washington Attorney General enforcement authority; and provides for civil penalties. *Id.* at 1114. Vacating a preliminary injunction, the Ninth Circuit held that HB 1470 was not an unconstitutional direct regulation of the federal government because it did not give Washington virtual power of review over ICE's detention decisions, prevent ICE's contractors from running detention facilities, limit the federal government's ability to "use contractors in" Washington, or require the federal government to transform its approach to immigration detention in the state or else abandon its facilities. *Id.* at 1118. Instead, the court in *Inslee* noted that HB 1470 sought "only to change the way GEO treats its detainees." *Id.*

Like Washington's HB 1470, California's SB 942 seeks only to change how GEO treats detainees held in California by ensuring that detainees are afforded rights relating to the conditions of their confinement. HB 1470 was enacted after the State of Washington's legislature found that "all people confined in prisons and detention facilities in Washington deserve basic health care, nutrition, and safety." *Id.* at 1112. Like Washington, California's legislature enacted SB 942 because it found it "necessary to protect the health, safety, dignity and humanity" of immigrant detainees.[7] And HB 1470's requirement that private detention facilities provide detainees with "sanitary, hygienic, and safe conditions," with the Attorney General having the authority to enforce that requirement, *id.* at 1114, is substantially similar to the basic rights recognized in SB 942 for the provision of health care, nutrition and safety and the California Attorney General's enforcement authority. Cal. Civ. Code § 53.9(b); Cal. Gov't Code § 12532.1; *cf. Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."). SB 942 does not give California (or Defendant) power over ICE detention decisions regarding whom to detain. It does not prevent GEO from operating detention centers. And it does

[7] *See* Cal. Sen. Bill. No. 942, Assem. Floor Analysis, at 3 (Aug. 21, 2026), 2025-2026 Reg. Sess. (Cal. 2026). California civil detainees in other contexts have long been protected by California laws such as the LPS Act (Cal. Welf. & Inst. Code §§ 5325–5325.1).

not limit ICE's ability to use private government contractors under 6 U.S.C. § 112(b)(2) as operators of immigrant detention facilities under federal law. *See* Compl. ¶ 46. For these reasons, SB 942, like HB 1470, is not a "state regulation of a contractor" that would "control federal operations" at GEO's facilities, as GEO contends. Compl. ¶ 74; *see also Inslee*, 151 F.4th at 1117 (discussing the meaning of "direct control over federal operations" and noting that "[n]o such control is authorized in HB 1470").

GEO's claim fails. SB 942 does not regulate the federal government but is an exercise of California's "general authority to ensure the health and welfare of inmates and detainees in facilities within its borders." *California*, 921 F.3d at 886; *see also Inslee*, 151 F.4th at 1116-17.

**B. SB 942 Is Not an Impermissible Licensing Regime.**

GEO's Complaint erroneously compares SB 942 to state laws that have been found unconstitutional under the intergovernmental immunity doctrine because they were unlawful licensing regimes. Compl. ¶ 75.[8] In general, as noted by the Ninth Circuit, the "impermissible" licensing regimes found to violate the Supremacy Clause "involved direct control by the state over federal government operations. They directly regulated the federal government by 'preventing [the federal government] from hiring the personnel of its choice' or by dictating the terms of a federal contract." *Nwauzor*, 127 F.4th at 762 (quoting *Newsom*, 50 F.4th at 757). Here, SB 942 does not create a licensing scheme of any kind for immigrant detention facilities, let alone a licensing scheme that would constitute a direct regulation of the federal government. Nor does SB 942 grant California the authority to determine whether a detention facility operates within the state or to serve as a legal impediment to GEO's continued operations. It does not speak to the federal government's hiring choices or dictate the terms of GEO's contracts with the United States. GEO is free to negotiate and enter into the terms of its federal contracts, including being

---

[8] Plaintiff's effort to expand standards applicable to licensing regimes, which could effectively terminate the ability of a contractor to operate, to include all "operational requirements," Compl. ¶ 75 (discussing "[s]tate permit, licensing, approval or operational requirements"), contradicts the recognized authority of states to regulate the activities of private contractors operating detention facilities within a state, as discussed in *Inslee*, 151 F.4th at 1116-17, and *Newsom*, 50 F.4th at 755.

bound (as it traditionally has been) to comply with ICE detention standards, which are compatible with SB 942.[9] *See* Opposition at Section I.A.1, Dkt. No. 12.

For the same reasons, the licensing cases relied on by GEO in Count I are insufficient to support a direct regulation intergovernmental immunity claim. Compl. ¶ 75. *Johnson v. Maryland*, 254 U.S. 51, 55 (1920) concerned whether the State of Maryland had the power to require a postal employee to obtain a driver's license. Unlike the state law at issue in *Johnson*, SB 942 does not seek to issue licenses to federal employees; it grants rights to detainees and authorizes the state to conduct enforcement actions against private companies (not federal employees). *Hancock v. Train*, 426 U.S. 167, 168 (1976) is similarly distinguishable because that case also concerned a state regulation requiring operating permits. Likewise, *Leslie Miller v. Arkansas*, 352 U.S. 187, 188-89 (1956) concerned whether a federal contractor could be subject to Arkansas's licensing requirements for contractors engaged in construction work. The *Leslie Miller* Court noted that doing so would give the state licensing board "a virtual power of review over" the federal government's determination of a "responsible" contractor eligible for armed services contract bidding pursuant to the Armed Services Procurement Regulations promulgated under the Armed Services Procurement Act of 1947. *Id.* at 188-90. By contrast, SB 942 does not give California the power to reject the federal government's chosen detention facility contractors.[10]

---

[9] GEO's Complaint refers to the Performance Based National Detention Standards (PBNDS 2011) as the applicable detention standards for its California facilities, while GEO's Motion for Preliminary Injunction refers to the National Detention Standards (NDS 2026). *Compare* Compl. ¶¶ 56–62 (discussing PBNDS 2011) *with* Pl.'s Mot. for Prelim. Inj. (PI Motion) at 4–6, Dkt. No. 6 (discussing NDS 2026). *See infra* Section V.

[10] *Leslie Miller* also is distinguishable because, unlike the Armed Services Procurement Regulations at issue in that case, no binding rules regarding detention standards have been promulgated by ICE in the case at hand; ICE's detention standards are agency guidance documents only. *See Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1186 (9th Cir. 2019) ("Legislative rules have the 'force of law,' and are subject to notice and comment under the APA before becoming effective . . . Policy guidance statements, on the other hand, 'do not have the force and effect of law and are not accorded that weight in the adjudicatory process.'" (citations omitted)). For the same reason, *Pub. Utils. Comm'n v. United States*, 355 U.S. 534, 542-43 (1958) (addressing state restraint on federal transportation procurement where federal regulations with "the force of law" applied), cited in Compl. ¶ 75, is inapposite.

## III. SB 942 IS NOT PREEMPTED BY FEDERAL LAW.

The Complaint also fails to state a plausible preemption claim. There is no indication in any statute or regulation having the force of law that Congress intended federal law to exclusively occupy the field of immigration detention health and welfare conditions or made any choices about standards or enforcement in this field that would be obstructed by SB 942. Nor is the federal interest in detention health and welfare conditions so dominant as to displace complementary regulation by states acting in their traditional role of protecting the health and welfare of detainees held within their borders. The Ninth Circuit rejected the same preemption claims in *Inslee*, 151 F.4th 1107, and they must be rejected here too. *See also California*, 921 F.3d at 885-86 (state law requiring access for state Attorney General immigration detention facility inspections not preempted); *see also GEO Grp., Inc. v. Ferguson*, No. C23-5626, 2026 WL 1983207, at *12 (W.D. Wash. July 9, 2026) ("Although GEO acknowledges that the Ninth Circuit has already 'rejected [its] arguments on . . . both field and conflict preemption,' it continues to raise them.") (citation omitted).

### A. Count II Fails to State a Viable Field Preemption Claim.

The Complaint's field preemption claim fails for two reasons. First, there is no pervasive framework of federal law occupying the field of detainee health and welfare conditions in privately operated facilities. Second, the federal interest in the field is not so dominant as to preclude complementary state regulation like SB 942. Accordingly, in *Inslee*, the Ninth Circuit rejected a similar field preemption challenge to a state law like SB 942 that protected the health and safety of civil detainees. 151 F.4th at 1123. "Federal law preempts state law when Congress has occupied the 'field,' enacting a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Preemptive intent may also be inferred "where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Rice*, 331 U.S. at 230).

In *Inslee*, the Ninth Circuit recognized the presumption against preemption that applies to laws like SB 942 because a state's historic powers include ensuring the health and welfare of detainees in facilities within its borders. *Inslee*, 151 F.4th at 1123; *accord Newsom*, 50 F.4th at 761. "To overcome the presumption against preemption, the challenging party must show a 'clear and manifest purpose of Congress' to preempt state law." *Inslee*, 151 F.4th at 1123 (quoting *Arizona*, 567 U.S. at 400).

The Ninth Circuit determined that HB 1470 was not field preempted because there was no demonstration of any congressional intent to supersede the state's authority in this domain. *Inslee*, 151 F.4th at 1123. Thus, the court saw "no indication that Congress ha[d] demonstrated any intent, let alone a clear and manifest intent, to preempt" Washington's law regulating detention facility health and welfare conditions. *Id.* at 1123.

As it did in *Inslee*,[11] GEO relies on federal statutes and regulations authorizing the Secretary of Homeland Security to contract for private detention services, a regulation stating general minimum eligibility criteria for immigrant detention at non-DHS facilities, and a statute establishing an "Immigration Detention Ombudsman." Compl. ¶¶ 10, 13, 46-49, 83, 84 (characterizing and relying upon 6 U.S.C. §§ 112(b)(2) and 205, 8 U.S.C. § 1231(g)(1), 18 U.S.C. § 4013 note "Contracts for Space or Facilities," 28 U.S.C. § 530C(a)(4), 8 C.F.R. § 235.3(e), 48 C.F.R. §§ 1.602-1(a) and 3017.204-90). Other than the Ombudsman statute (6 U.S.C. § 205) and 8 C.F.R. § 235.3(e), none of these statutes or regulations even refer to detention conditions, let alone contain any comprehensive or detailed provisions concerning the subject. The Ombudsman statute shows no congressional intent to preclude the application of state health and welfare protections for detainees residing within a state's borders to immigration detention facilities. *See* 6 U.S.C. § 205. The statute lacks any substantive requirements and simply creates the Ombudsman position to provide an avenue for federally facilitated, voluntary resolutions of identified issues and complaints. *Id.*[12]

---

[11] RJN, Ex. D (Appellee's Answering Brief, *GEO Grp., Inc. v. Inslee*, 151 F.4th 1107 (9th Cir. 2025) (No. 24-2815), 2024 WL 6959787) at 52-53.

[12] Moreover, since *Inslee* was decided, the federal government has shut down the Ombudsman's office, RJN, Ex. E (United States House of Representatives Committee on Rules, Explanatory Statement

(continued…)

Nor does 8 C.F.R. § 235.3(e) show any intent to preempt all state health and welfare regulation as applied to immigration detention. A regulation may have preemptive force if it falls within the scope of an agency's delegated authority and was "meant to pre-empt state law." *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028 (9th Cir. 2022). Section 235.3(e) sets forth general, minimum eligibility criteria that must be met before an immigrant may be housed at a non-DHS facility. *See Youngers v. Mgmt. & Training Corp.*, No. 20-465, 2021 WL 5994878, at *8 (D.N.M. Apr. 19, 2021) ("§ 235.3(e) exists only to constrain 'ICE's discretion to decide where to house pre-removal detainees.'") (quoting *Newbrough v. Piedmont Reg'l Jail Auth.*, No. 3:10CV867–HEH, 2012 WL 169988, at *4 (E.D. Va. Jan. 19, 2012)); *accord* Compl. ¶ 12 (8 C.F.R. § 235.3(e) "identif[ies] qualifying criteria for entities contracted to provide detention services"). It is not a pervasive framework of regulation occupying the detention conditions field. As the U.S. Attorney General explained in issuing the regulation, "This rule addresses the change from carrier responsibility to Service responsibility for the custody and detention of excludable aliens . . . ; it does not address details of specific alien detention conditions. *The conditions under which aliens are held would be a matter for other proceedings*." Immigration User Fee, Conforming Amendments, 54 Fed. Reg. 100-01 (Jan. 4, 1989) (emphasis added).

It does not change the analysis that Congress has required ICE to report on its progress in implementing detention standards and on facility compliance. Compl. ¶ 85. This direction evidences congressional intent to promote detainees' health and welfare. It does not indicate an intent to displace all state law promoting the same objective, especially in view of the paucity of legislation in the field.

To the extent the Complaint alleges that federal detention standards[13] establish field preemption (Compl. ¶ 85), as GEO argued in *Inslee*,[14] the claim fails because the detention standards do not have the force of law for preemption purposes. "Because the Supremacy Clause

accompanying Division C—Department of Homeland Security Appropriations Act, 2026, https://docs.house.gov/billsthisweek/20260119/DEF%20LHHS%20HS%20THUD%20-%20JES%20 %20 Division%20C%20-%20Homeland%20-%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%20-%20Reduced%20File%20Size.pdf (last visited Nov. 16, 2026)) at 118, thereby further undermining the field preemption claim.

[13] An intent to preempt a field may not be inferred from the mere existence of federal regulations. *See generally Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 716-17 (1985).

[14] *See* RJN, Ex. D at 9, 53-56.

privileges only '[l]aws of the United States,' an agency pronouncement must have the force and effect of federal law to have preemptive force." *Reid v. Johnson & Johnson*, 780 F.3d 952, 964 (9th Cir. 2015) (citation omitted). *Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1186 (9th Cir. 2019) (policy guidance statements do not have the force of law).

The ICE detention standards are not a regulation adopted after notice and comment or any other type of agency issuance that might qualify for preemptive effect under *Reid*, 780 F.3d at 964. At least one court has rejected preemption arguments based on ICE detention standards because they do not have the force of law. *GEO Grp., Inc. v. Inslee*, 720 F. Supp. 3d 1029, 1060 (W.D. Wash. 2024), *vacated on other grounds and remanded by GEO Grp., Inc. v. Inslee*, 151 F.4th 1107 (9th Cir. 2025) ("[T]he PBNDS is merely an agency publication and does not indicate the intent of Congress. Therefore, the PBNDS is not a federal law and, for this reason alone, it cannot serve as the basis for a field preemption claim").

The Complaint also fails to state a plausible claim that conditions of confinement for the detention of immigrants is a "field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." Compl. ¶ 88 (quoting *Rice*, 331 U.S. at 230). "[N]ot all state regulations touching on immigration are preempted." *Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957, 972 (9th Cir. 2017); *De Canas v. Bica*, 424 U.S. 351, 355 (1976), *superseded by statute as stated in Kansas v. Garcia*, 589 U.S. 191 (2020) (The "Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted"); *cf. Inslee*, 151 F.4th at 1123 (The "presumption against preemption applies even if the law touches on an area of significant federal presence") (citation modified).

GEO's "dominant federal interest" argument—which GEO vigorously advanced in *Inslee*[15]—has been implicitly rejected by the Ninth Circuit. *See Inslee,* 151 F.4th at 1124; *see also Ferguson*, 2026 WL 1983207, at *12 (recognizing that *Inslee* had confirmed that Washington's law regulating health and welfare conditions in privately operated immigration detention facilities was not preempted); *cf. Chao Chen v. GEO Grp., Inc.*, 287 F. Supp. 3d 1158, 1165 (W.D. Wash.

[15] RJN, Ex. D at 18, 49, 51-52, 57.

2017) (rejecting GEO's "dominant federal interest" preemption theory as applied to application of state minimum wage laws to immigration detainees working in privately operated immigration detention facilities). The Complaint cites no comparable authority finding field preemption on a "dominant federal interest" theory.[16]

Where the Ninth Circuit has found a field related to immigration regulation to be preempted based on an "overwhelming dominant federal interest," it has relied on how comprehensively Congress has regulated in the particular field. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1023-26 (9th Cir. 2013) (Immigration and Nationality Act (INA) demonstrates an "'overwhelmingly dominant federal interest in the field [of harboring unlawfully present immigrants]'" based on "the comprehensive nature" of the federal anti-harboring statute, the statute's "place within the INA's larger structure governing the movement and harboring of aliens," and the federal statute's "explicit but limited provision for state involvement") (quoting *Georgia Latino All. for Hum. Rts. v. Gov. of Georgia*, 691 F.3d 1250, 1264 (11th Cir. 2012)). GEO's argument is also undermined by the federal government's own practice of requiring private, state, and local detention contractors to comply with applicable state laws. *See, e.g.*, *Nwauzor*, 127 F.4th at 762.

Finally, the claim that a preempting dominant federal interest exists regarding the regulation of detainee living conditions is also contradicted by the fact that state tort law provides a vehicle for immigrant detainees to seek remedies for substandard conditions of confinement and mistreatment against private operators. *See Minneci v. Pollard*, 565 U.S. 118, 127, 130 (2012); *Karboau v. Clark*, 577 Fed. Appx. 678, 679 (9th Cir. 2014); *Roe v. CoreCivic, Inc.*, 823 F.Supp.3d 1137 (S.D. Cal. 2026). Count II of the Complaint does not and cannot state a claim for field preemption and must be dismissed with prejudice. *See Inslee*, 151 F.4th at 1123.

---

[16] The Complaint is not supported by the cases it cites. *See Arizona*, 567 U.S. at 400-10 (preemption based on an analysis of the field-occupying federal statutes but explaining that "[w]hen there was no comprehensive federal program regulating the employment of unauthorized aliens," a state "had authority to pass its own laws on the subject"); *Hines v. Davidowitz*, 312 U.S. 52, 68-74 (1941) (finding a Pennsylvania immigrant registration and identification card requirement and enforcement regime was preempted because it conflicted with the full purposes and objectives of Congress); *see also Mathews v. Diaz*, 426 U.S. 67 (1976) (not a preemption case).

### B. Count III Fails to State a Viable Obstacle/Conflict Preemption Claim.

Count III of the Complaint fails to state a viable claim that GEO "cannot comply with both federal and state law" or that SB 942 "poses an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Inslee*, 151 F.4th at 1123 (quoting *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016)). The Complaint's preemption claim must satisfy a high standard. "[I]mplied preemption analysis does not justify a 'freewheeling judicial inquiry into whether a state statute is in tension with federal objectives'; such an endeavor 'would undercut the principle that it is Congress rather than the courts that preempts state law.' . . . [A] high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *California*, 921 F.3d at 879 (quoting *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 607 (2011)). The Ninth Circuit also rejected GEO's conflict preemption claim as applied to Washington's materially equivalent HB 1470 in *Inslee* and as to California's detention facility inspection statute in *California*. Count III of the Complaint alleging conflict preemption must likewise be rejected here.

In *Inslee*, the court initially noted that GEO was required to "overcome the presumption against preemption." 151 F.4th at 1123. The court also observed that the challenged laws "do not apply to the United States. They apply to GEO." *Id*. The court found that nothing in Washington's law frustrated the federal government's ability to detain individuals at GEO's detention facility and that the law did not "prevent GEO from accomplishing any task that has been required by the federal government." *Id*. at 1123-24.

*Inslee*'s reasoning that nothing in Washington's law prevented GEO from accomplishing any task required by the federal government is equally applicable to SB 942. Here too, nothing in SB 942 frustrates the federal government's ability to detain individuals at any of GEO's California facilities or prevents GEO from accomplishing any task required by the federal government. *See also California*, 921 F.3d at 885 (distinguishing cases that "evinced states active frustration of the federal government's ability to discharge its operations" and noting that the relevant law challenged in *California* did "not regulate whether or where an immigration detainee may be confined, require that federal detention decisions or removal proceedings conform to state

law, or mandate that ICE contractors obtain a state license"). The Complaint fails to allege any way in which SB 942 poses an obstacle to the accomplishment and execution of Congress's full purposes and objectives. The Ninth Circuit has already rejected the Complaint's legal theories.[17]

The obstacle preemption cases the Complaint cites (Compl. ¶¶ 90–99) only illuminate its failure to state a claim. In *Arizona*, the State of Arizona had enacted a state criminal prohibition where no federal counterpart existed making it a state criminal misdemeanor for an unauthorized immigrant to seek or engage in employment. 567 U.S. at 403-05. But Congress had enacted a "comprehensive framework," including civil sanctions provisions, reflecting that "Congress [had] made a deliberate choice not to impose criminal penalties" on immigrants.[18] *Id.* Here, California is not applying its own scheme for enforcing federal law. Nor is there a "comprehensive" framework of laws concerning immigration detention health and welfare, nor any indication of a "deliberate choice" by Congress not to have private contractors be subject to civil penalties for substandard conditions.

The Complaint cites one case finding obstacle preemption in the immigration area, *Hines v. Davidowitz*, 312 U.S. 52 (1941). In *Hines*, a state law requiring immigrants to register annually with state authorities, carry a state-issued immigration registration card, and be subject to imprisonment for failing to register or carry their card or present it on request from police or labor law officials was preempted because it conflicted with the evident Congressional objective. *Id.* at 59, 68-74. The Court's discussion included a detailed description of Congress's objective to have "uniformity" in the field of alien registration and how Congress had "provided a standard for

---

[17] It is of no moment that California made a statement of fact in *California* that the relevant state law there, AB 103, did "not impose standards on the conditions of facilities." *Contra* Compl. ¶ 3. The State did not take the position that a law that did impose standards would be preempted.

[18] *See also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 415 (2003) (state law providing sanctions to compel disclosure of, and payment under, insurance policies sold in Europe during the Nazi area, supplemented by a new state cause of action for Holocaust survivors if the other sanctions should fail, conflicted with Presidential executive agreement, which had preemptive force of law like a treaty, and which employed a mechanism for voluntary settlements through a compensation foundation, which agreement also included measures to try to prevent lawsuits like those the state law provided for); *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 377-82 (2000) (Massachusetts law restricting the state and its agencies from purchasing from companies doing business with Burma was preempted because it "penalize[ed] individuals and conduct that Congress ha[d] explicitly exempted or excluded from sanctions" and removed the President's ability to bargain for the benefits of access to the entire U.S. national economy).

alien registration in a single integrated and all-embracing system in order to obtain the information deemed to be desirable in connection with aliens." *Id*. at 69-74. Further, Congress had specifically intended to leave immigrants "free from the possibility of inquisitorial practices and police surveillance." *Id*. at 74. There is nothing remotely comparable alleged here as to Congressional objectives regarding conditions of confinement.

Dismissal is further warranted because the Complaint does not identify any way in which compliance with both SB 942 and any federal statute or regulation is alleged to be "a physical impossibility." *Arizona*, 567 U.S. at 399 (citation omitted).[19] To the extent GEO's conflict preemption claim relies on ICE detention standards, including that they might be incorporated into one or more of GEO's contracts, Compl. ¶ 92, the Complaint again fails to state a claim. The Complaint fails to allege that SB 942's substantive standards are inconsistent with, or somehow undermine, any ICE detention standards, let alone that they pose any obstacle to achieving any congressional purpose or objective. *See* Opposition at 8-9 (comparing SB 942's rights with similar standards under the United States Constitution and NDS 2026). The detention standards, or contract terms, lack preemptive force and do not clearly indicate any intent to preempt state regulation. *See supra* at Section III.A; *see also GEO Grp. v. Inslee*, 720 F. Supp. 3d at 1061 ("Because the PBNDS is not a federal law, any conflict between it and HB 1470 § 2 does not support a conflict preemption claim").

Further, as the Supreme Court recently explained, "there is no federal pre-emption *in vacuo*, without a constitutional text or a federal statute to assert it." *Hencely v. Fluor Corp.*, 146 S. Ct. 1086, 1093 (2026) (brackets omitted). Instead, "the federal restrictions or rights that are said to conflict with state law must stem from either the Constitution itself or a valid statute enacted by Congress," *id.*, not from a contract. The Court has recognized a "narrow[]" exception to this rule, for "a few areas, involving uniquely federal interests, [that] are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and

[19] In its preliminary injunction motion, GEO argues that it will be impossible for it to comply with both SB 942's inspection access requirement and a contractual requirement to obtain ICE pre-clearance. Pl.'s Mot. for Prelim. Inj. 20-21, Dkt. No. 6. This argument ignores that GEO already is subject to a similar access requirement under the California law the Ninth Circuit upheld in *California*, 921 F.3d at 885-86. *See* Cal. Gov't Code § 12532(c).

replaced, where necessary, by federal law fashioned by federal courts in the absence of congressional action." *Id.* at 1094 (internal quotations omitted). However, that exception applies only in "rare areas" of "uniquely federal interest," and where there is a "significant conflict" between an identifiable federal policy or interest and the operation of state law, or when "specific objectives" of federal legislation would be frustrated, which is not the case here. *Id.*

GEO cannot make any of the required showings as a matter of law. It cannot identify any "uniquely federal interests" regarding conditions of confinement in civil detention facilities. *Id.* And it cannot show a "significant conflict between an identifiable federal policy or interests and the operation" of SB 942 or that the "specific objectives of federal legislation would be frustrated" because there is no federal legislation or scheme of regulations regarding health and welfare conditions in immigration detention facilities. *See id.* In sum, Count III of the Complaint alleging conflict preemption must be dismissed with prejudice because SB 942 does not conflict with any federal law. *Inslee*, 151 F.4th at 1123-24; *California*, 921 F.3d at 885-86.

## IV. COUNT IV FAILS TO STATE A VIABLE CONTRACT CLAUSE CLAIM.

GEO's Complaint fails to plead a cognizable claim under the Contract Clause of the Constitution, Compl. ¶¶ 100–105, because GEO does not plausibly allege that SB 942 substantially impairs GEO's contracts with ICE. *See Sveen*, 584 U.S. at 819. Even if SB 942 did impair those contracts, GEO fails to plausibly allege why SB 942 is not reasonably tailored to advance a significant and legitimate public purpose. *Id.* Indeed, SB 942 is appropriately drawn to serve a valid public purpose: ensuring the health and safety of civil immigrant detainees residing within California's borders.

The Contract Clause provides that states shall not "pass any . . . Law impairing the Obligation of Contracts . . . . " U.S. Const. art. I, § 10, cl. 1. The Contract Clause is "narrowly construe[d]" in order "to ensure that local governments can effectively exercise their police powers." *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003). The Supreme Court has articulated a two-step test to determine whether a state law violates the Contract Clause. First, courts evaluate "whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Sveen*, 584 U.S. at 819 (2018) (quoting *Allied Structural Steel Co. v.*

*Spannaus*, 438 U.S. 234, 244 (1978)). To do so, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* Second, if there is substantial impairment, the inquiry turns to "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).

**A. SB 942 Does Not Substantially Impair GEO's Contracts with ICE.**

GEO has not plausibly alleged that SB 942 substantially impairs its contracts with ICE. While GEO claims that SB 942 is "inconsistent with and conflict[s] with GEO's contracts with ICE," including the detention standards "incorporated therein," and "will force GEO to breach or materially alter its performance under its contracts," Compl. ¶ 102, GEO fails to point to any provision in SB 942 that will compel it to breach any explicit or implicit contractual term. *See Hotop v. City of San Jose*, 982 F.3d 710, 717 (9th Cir. 2020) (concluding plaintiffs failed to state a Contract Clause claim because they did not specify how the challenged ordinance affected their contracts). GEO's Complaint also does not explain how any provision in SB 942 conflicts with any detention standard requirement. Thus, GEO's conclusory statements that SB 942 will cause it to breach its contracts, without pleading any conflicts between the two, do not hold water.

SB 942 is a foreseeable state law that does not contravene GEO's reasonable contractual expectations. GEO alleges that SB 942 undermines its reasonable expectations because SB 942 constitutes an "after-the-fact imposition of different or additional state-law standards, access obligations, enforcement mechanism, and penalties," Compl. ¶ 103, and that "federal regulations already govern the same topics."[20] *Id.* ¶ 104. However, state laws do not impair contracts merely because they address the same topics as do contracts or federal regulations. *See Kaiser Dev. Co. v. City & Cnty. of Honolulu*, 649 F. Supp. 926, 948 (D. Haw. 1986), *aff'd*, 898 F.2d 112 (9th Cir. 1990) ("An otherwise valid law is not unconstitutional merely because an object of regulation is also the subject of a contract."). In *Energy Reserves*, 459 U.S. at 403-04, 416, the Supreme Court

[20] On the contrary, federal regulations cited by GEO, including 8 C.F.R. § 235.3(e) and 6 U.S.C. § 205, show no congressional intent to preclude the application of state health and welfare laws to immigration detention facilities. *See supra* Section III(c)(1).

held that a state law imposing a lower price ceiling for natural gas than federal law permitted did not substantially impair gas purchasing contracts between a natural gas supplier and a public utility, which included price escalator clauses allowing prices to rise to levels set by the government. The Court reasoned the state law did not impair the appellant's reasonable expectations, because the parties operated in a heavily regulated industry, meaning that state regulation of natural gas prices, although absent when the contracts were executed, was foreseeable. *Id.* at 405-06, 413-16. Similarly, here, private immigration detention facilities are highly regulated: they are subject to California state laws, including, but not limited to, all appropriate state and local building, zoning, health, safety, and fire statutes, ordinances, and regulations, and minimum jail standards under Title 15 of the California Code of Regulations,[21] along with all local and state public health orders and occupational safety and health regulations.[22] SB 942, which also aims to ensure safe and healthy conditions in immigration detention facilities, is therefore foreseeable and does not defy GEO's reasonable expectations. Existing federal law governing immigration detention facilities shows no congressional intent to preclude the application of state law to these facilities. *See supra* Section III.A. There is therefore no substantial impairment here.

Moreover, SB 942 does not prevent GEO from safeguarding or reinstating its rights, *see Sveen*, 584 U.S. at 819, because SB 942 does not affect GEO's rights under its contracts with ICE. In *Spannaus*, 438 U.S. at 245-47, the Supreme Court held that a state law imposing retroactive pension-funding obligations substantially impaired a company's pension contract, because it substantially modified a basic contractual term, nullified express contractual terms on which the company relied, changed the company's obligations "in an area where the element of reliance was vital—the funding of a pension plan," and imposed an unexpected liability in potentially disabling amounts. In *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 3, 17-21 (1977), the Supreme Court concluded that two states substantially impaired their contract with bondholders by repealing a statutory covenant that prevented pledged revenues from being used

---

[21] Cal. Penal Code § 9506(a)(1).
[22] Cal. Gov't Code § 7321(a).

to subsidize rail passenger transportation, because the repeal eliminated an important security provision on which the bondholders' rights depended, and the states did not attempt to compensate bondholders for any losses. And in *Southern California Gas Co.*, 336 F.3d at 887-88, 890-93, the Ninth Circuit determined a municipal ordinance, which required advance payment for excavations or trench cuts, deprived the plaintiff of its contractual rights to perform such work without paying additional fees. Unlike the laws in *Spannaus* and *United States Trust Company of New York*, SB 942 does not nullify or change any contractual terms on which GEO's rights depend. Unlike the ordinance in *Southern California Gas Co.*, SB 942 does not restrict GEO's ability to exercise any rights it already possesses under its contracts with ICE. For the foregoing reasons, SB 942 does not substantially impair GEO's contracts with ICE.

### B. SB 942 is Reasonably and Appropriately Tailored to Advance a Significant and Legitimate Public Purpose.

Even if SB 942 substantially impaired GEO's contracts, it does not violate the Contract Clause because it advances a significant and legitimate public purpose in a reasonable and appropriate manner. *See Sveen*, 584 U.S. at 819; *Campanelli v. Allstate Life Ins. Co.*, 322 F.3d 1086, 1099 (9th Cir. 2003) (holding that a state law that substantially impaired contracts was justified by a legitimate public purpose and did not violate the Contract Clause). Such public purposes include "the remedying of a broad and general social or economic problem" and must involve "the State . . . exercising its police power, rather than providing a benefit to special interests." *Energy Reserves*, 459 U.S. at 411-12. The state's police power is exercised through legislation that protects "the lives, health, morals, comfort and general welfare of the people." *Spannaus*, 438 U.S. at 241. Accordingly, courts have recognized significant and legitimate public purposes such as protecting public health and stable incomes, *Cal. Grocers Ass'n v. City of Long Beach*, 553 F. Supp. 3d 784, 792 (C.D. Cal. 2012); protecting public safety and local law enforcement resources, *United States v. New York*, No. 1:26-CV-1360, 2026 WL 2225423, at *21 (N.Y.N.D. Aug. 23, 2026), *appeal docketed sub nom. United States v. Russo*, No. 26-2806 (2d Cir. Oct. 5, 2026); and ensuring the health and safety of residents, *S. Cal. Rental Housing Ass'n v. Cnty. of San Diego*, 550 F.Supp.3d 853, 863 (S.D. Cal. 2021), or workers, *Nw. Grocery Ass'n v.*

*City of Seattle*, 526 F.Supp.3d 884, 897 (W.D. Wash. 2021). Unless the state itself is a contracting party, courts "defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412-13 (citation omitted); *see also Seltzer v. Cochrane*, 104 F.3d 234, 236 (9th Cir. 1996).

SB 942 serves a significant and legitimate public purpose: ensuring the health and welfare of civil detainees, as well as humane conditions of confinement, in immigration detention facilities. SB 942 does not favor specific parties but rather safeguards the core rights of all civil detainees, regardless of their facility type.[23] Importantly, since California is not a party to GEO's contracts, California's legislative judgment about the necessity and reasonableness of SB 942 is entitled to deference. *See Energy Reserves*, 459 U.S. at 412-13. And as noted, California's legislature found that SB 942 is necessary to protect the health, safety, dignity and humane treatment of immigration detainees.[24] SB 942 is reasonably and appropriately tailored to do so, because it extends to immigrant detainees nine core rights that are already afforded to other civil detainees, within the scope of California's police power. Therefore, SB 942 does not violate the Contract Clause.

## V. GEO Fails to Plead Key Facts Regarding the Operative Contracts and Applicable Federal Detention Standards for Its California Facilities, Rendering Its Complaint Facially Defective.

At a minimum, and in the alternative, GEO should be required to amend the Complaint to plead essential facts regarding the contracts and detention standards that apply to its California facilities. GEO's Complaint advances an "as applied" challenge to SB 942. Compl. ¶ 80, 89, 99. A successful as-applied challenge does not render the law itself invalid but only the particular application of the law." *Foti*, 146 F.3d at 635. Thus, facts regarding how SB 942 applies to GEO's current operations are critical to its case. GEO's Complaint fails to allege such facts.

First, GEO's Complaint discusses only cherry-picked language from one contract (the Mesa Verde Contract). Compl. ¶¶ 63–72. The Complaint fails to allege any contractual facts relating to the other California facilities that it operates and fails to allege the full terms of the

[23] Cal. Sen. Bill. No. 942, § 2(b), 2025-2026 Reg. Sess. (Cal. 2026).
[24] *See* Cal. Sen. Bill. No. 942, Assem. Floor Analysis, at 3 (Aug. 21, 2026), 2025-2026 Reg. Sess. (Cal. 2026).

operative contract for the Mesa Verde facility, including recent apparent contract amendments, as alluded to by GEO in its Motion for Preliminary Injunction. *See* Ragsdale Decl. ¶¶ 12-14, 17, Exs. E, F, Dkt. No. 6.1 (discussing recent bilateral contract modification to incorporate the new California-wide performance work statement).[25] GEO separately has contended that it is likely to prevail on the merits of its claims because of these contract terms—*see* PI Motion—yet has failed to adequately plead this apparently new contractual relationship with ICE in its Complaint. GEO's Supremacy Clause and Contract Clause claims extensively rely on the terms of GEO's federal contract to support its arguments that SB 942 directly regulates the federal government by interfering with the terms of the contract, as well as its argument that SB 942 has impaired GEO's contractual expectations and ability to perform under its contract. Compl. ¶¶ 63-72, 92, 93, 95, and 100–105; *see also* PI Motion at 6-9. Contractual documents "need to be read together, as a harmonious whole" and a plaintiff cannot cherry pick contractual terms that would lead to "misleading argumentation." *See Sanchez v. Navy Fed. Credit Union*, No. EDCV 23-285, 2023 WL 6370235, at *4 (Aug. 14, 2023 C.D. Cal.).[26] Such allegations are insufficient in a complaint that broadly seeks relief regarding GEO's "operation of federal immigration detention facilities in California on behalf of ICE." Compl. ¶ 80; *see id.* ¶¶ 89, 99 and Prayer for Relief.

Second, the allegations in the Complaint regarding the ICE detention standards applicable to GEO's facilities in California contradict statements made in Plaintiff's Motion for Preliminary Injunction, making its Complaint unintelligible. *Compare* Compl. ¶¶ 56-62 (discussing PBNDS 2011) *with* PI Motion at 4-5 (discussing National Detention Standards 2026). The relevant universe of detention standards is critical in a case that alleges SB 942 is inconsistent with such standards and that Congress had a clear intent to make the standards preempt any state law touching on the same subjects. And again, no facts regarding the relevant detention standards at

---

[25] Because Plaintiff's case only relies on allegations regarding its Mesa Verde ICE Processing Center, Golden State Annex and Central Valley Annex, Compl. ¶ 64, its broad request for statewide injunctive relief, Compl. ¶ 26, is improper.

[26] This is especially true where GEO's contracts with ICE have a history of requiring compliance with state laws as well as federal law. *E.g. Inslee*, 151 F.4th at 1117 ("The contract explicitly orders GEO to comply with obligations imposed under state law."); *Wash. Dep't of Health v. GEO Grp., Inc.*, No. 24-5880, 2025 WL 2986482, at *2 (9th Cir. Oct. 23, 2025) ("federal contract and policy document mandated GEO Group's compliance with state law.").

its other California facilities are alleged by GEO in the Complaint. GEO's failure to plead the correct universe of ICE detention standards currently applicable to its California facilities renders the Complaint facially defective.

GEO's failure to plead all the terms of its Mesa Verde contract and the operative detention standards, and to plead any facts regarding its other California facilities, renders the Complaint defective under the well-known requirement that a complaint must plead "sufficient factual matters" to state a claim. *Iqbal*, 556 U.S. at 678. Together, these pleading defects are especially problematic because GEO brings an as-applied constitutional challenge to SB 942, which is necessarily a fact-intensive inquiry. As a result, GEO's Complaint must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, GEO's Complaint fails to state a claim upon which relief can be granted, and no amendments can cure these defects. The Court therefore should grant Defendant's Motion to Dismiss with prejudice.

Dated: November 18, 2026

Respectfully submitted,

**ROB BONTA**
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
VILMA PALMA-SOLANA
VIRGINIA CORRIGAN
Supervising Deputy Attorneys General
ALYSSA ZHANG
KENNETH SUGARMAN
Deputy Attorneys General

/s/ EMILIA P. E. MORRIS
Emilia P. E. Morris
Deputy Attorney General
*Attorneys for Defendant Rob Bonta, in his official capacity as Attorney General of the State of California*